UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN EARLY, } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:20-cv-1368-RDP |
| } | |
| CITY OF GARDENDALE, et al., } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

This case is before the court on a Motion for Summary Judgment filed by Defendant City of Gardendale and Defendants Waldrop, Sharpe, and Grigsby. (Doc. # 23). The Motion (Doc. # 23) has been fully briefed and is ripe for review. (Docs. # 23, 24, 28, 29). After careful consideration, the court concludes that Defendants' Motion (Doc. # 23) is due to be granted.

**I.     Background**[1]

This action stems from the alleged lack of medical care that Plaintiff received while incarcerated at the Gardendale City Jail. Plaintiff has alleged that Defendant City of Gardendale ("the City") and Defendants Lisa Waldrop, Steve Sharpe, and Vicki Grigsby -- all of whom are employed by the City as public safety dispatchers[2] (collectively the "Dispatchers") -- violated his Eighth and Fourteenth Amendment rights by acting with deliberate indifference to his health and safety. (Docs. # 1; # 22-3 at 3; # 22-4 at 3; # 22-5 at 3). Plaintiff has also asserted a state-law claim

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] As public safety dispatchers, the Dispatchers were responsible for answering calls, contacting the fire department or ambulance service when needed, checking the jail every half hour, and feeding inmates. (Doc. # 22-3 at 4).

of negligence against the City based on the allegedly negligent conduct of the Dispatchers. (Doc. # 1 at 12-13).

Plaintiff John Early was arrested on or about October 1, 2019 for failure to pay traffic citations and sentenced to 40 days at the Gardendale City Jail. (Docs. # 1 at 7; # 22-2 at 10, 18; # 22-7 at 1). On or about October 10, 2019, Plaintiff noticed that his foot was swollen, draining yellow puss, and that his toes had turned purple. (Doc. # 1 at 7). Plaintiff also noticed that his chest was bleeding and draining.[3] (*Id.* at 7-8; Doc. # 22-3 at 12). When Plaintiff attempted to show Defendant Waldrop the condition of his foot and chest, Defendant Waldrop stated that she did not want to look for fear of upsetting her breakfast. (*Id.* at 9). Defendant Waldrop told Plaintiff that his foot condition "was probably just athlete's foot" and that the issue with his chest likely resulted from him scratching a scab. (*Id.* at 8). Plaintiff himself identified the issue as athlete's foot and stated that his chest had started bleeding when he "squeez[ed] on it some." (Doc. # 22-2 at 15-16).

Defendant Waldrop moved Plaintiff to a cell for medical observation[4] and requested that the fire department observe his condition.[5] (Docs. # 1 at 8; # 22-3 at 12). Upon arrival, the paramedics found Plaintiff

> sitting on the side of bed at the city jail. [He] was alert and oriented and was bleeding from his chest. [He] stated hat he had a tumor on his chest and he had been scratching it to make it bleed. [His] wound was covered with a sterile bandage, [and he was] left in police custody.

---

[3] Plaintiff uses "chest" and "shoulder" interchangeably to identify the same wound. (Doc. # 22-2 at 17). For consistency purposes, the court refers to his "chest."

[4] The Jail contains two cells that are "basically like isolation medical cells." (Doc. # 22-3 at 8). These cells were used to house people who were intoxicated or charged with a felony. (*Id.*). Occasionally, when an inmate encountered a medical problem (particularly a communicable disease), that inmate would be moved to one of the cells. (*Id.*). Staff would monitor that inmate away from the "commotion" of general population and provide some treatment, such as ibuprofen or Tums for those experiencing withdrawal symptoms. (*Id.* at 9-10).

[5] Each Defendant Dispatcher testified that standard Jail protocol directed staff members to contact the fire department if an inmate requested medical help. (Doc. # 22-5 at 9; # 22-3 at 15; # 22-4 at 8). The fire department was responsible for checking an inmate's vitals and determining whether the inmate needed to visit the Emergency Room. (Doc. # 22-5 at 9).

(Doc. # 22-9 at 4). The paramedics noted no other abnormalities. (*Id.* at 3-4). Plaintiff, on the other hand, testified that his foot had a "massive infection" and that the paramedics cleaned his foot and provided him with gauze. (Doc. # 22-2 at 14). Plaintiff further testified that he was denied "medical help" even after the paramedics stated in the presence of Defendant Waldrop that he "needed medical attention" and a hospital was "a mile down from the jail." [6] (*Id.*). After the paramedics left, Defendant Waldrop allegedly told Plaintiff that if he "were to do any more complaining or give them any more hard time," then she would "see that [he] got extra days in that jail . . . ." (Doc. # 22-2 at 15).[7]

After the paramedics left Plaintiff demanded – but claims he was denied -- medical treatment on two occasions.[8] (Doc. # 22-2 at 17). He contends that other inmates told the "jailers" that he needed medical help, although it is unclear what specific needs they referenced. (*Id.*). At some point while Plaintiff was in the medical observation cell, two "jailers" provided Plaintiff with ointment and Band-Aids (allegedly from their personal funds as the Jail did not provide those items). (Doc. # 22-2 at 17-18).

Plaintiff's forty day sentence was cut short on the evening of November 1, 2019 when the Tarrant Police Department arrested him on an outstanding warrant. (Doc. # 22-10 at 1-3). During

---

[6] Defendants argue that the paramedics' alleged statement that Plaintiff needed medical treatment is inadmissible hearsay because Plaintiff cannot recall their names to make them available at trial. (Doc. # 29 at 2). However, it is possible that the statement is admissible for a non-truth purpose: to show the effect on the listener (that is, Defendant Waldrop was aware of Plaintiff's need for medical attention and unlawfully disregarded that need). *See United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (explaining that statements "offered only to show their effect on the listener" are not hearsay because the statements are offered not for the truth of the matter asserted but to "provide[] a context to assess [listener]'s response."). Thus, the paramedics' statements qualify as Rule 56 evidence.

[7] Although Defendant Waldrop denies this allegation (Doc. # 22-3 at 17), the court must construe this Rule 56 evidence in the light most favorable to Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261, 106 S. Ct. 2505, 2516 (1986).

[8] While some of the facts surrounding this allegation are unclear, the record shows that Plaintiff asked Defendant Sharpe for help on at least one occasion, who stated that Defendant Grigsby was the correct person to ask. (Doc. # 22-2 at 18).

the Police Department's intake process, the Department noted "staph" in the cell next to the question, "Is the skin in good condition and free of vermin?" (*Id.* at 5). The notation "No" appears next to the 29 other health-related questions. (*Id.*). The following day, Plaintiff was released on a medical bond. (*Id.*).

On November 4, 2019, Plaintiff presented to the emergency room at St. Vincent's Hospital and reported that he had "staph to left lower leg and thumb on left hand." (Doc. # 22-6 at 6). The physician who observed Plaintiff's foot stated that his condition looked like athlete's foot. (Doc. # 22-2 at 20). Indeed, Plaintiff was diagnosed that same day with tinea pedis (also known as athlete's foot), along with bacterial cellulitis and poison oak. (Doc. # 22-6 at 2, 9). Plaintiff's discharge papers instructed him to "[k]eep the area between the toes clean and dry," apply a topical cream, take medication, and follow up in two days. (Doc. # 22-6 at 4). Notably, there are no records from St. Vincent's indicating that Plaintiff had a staph infection or was otherwise experiencing issues related to his chest.

On November 5, 2019, Plaintiff presented to the emergency room at the University of Alabama at Birmingham Hospital ("UAB Hospital") with thumb pain and swelling, as well as skin lesions on his foot, leg, and forearm. (Doc. 22-8 at 1). Wound cultures from his thumb revealed the existence of MRSA, although there is no indication of what caused this injury other than Plaintiff's report that he spent time in the woods and got stuck by thorns. (*Id.* at 1, 4). Following biopsies of the lesion on his chest (which the physician noted "had been present for a number of years"), Plaintiff was diagnosed with basal cell carcinoma. (*Id.* at 4). Surgical oncology performed a wide local excision and gave Plaintiff instructions on wound care. (*Id.*).

UAB records related to Plaintiff's foot are minimal. Initially, Plaintiff complained of a rash that he believed was consistent with a staph infection. (Doc. # 22-8 at 11). A physical examination

4

revealed that he had unroofed blisters and lesions on his second toe, which would be "covered" by the antibiotics already prescribed for the infection of his thumb. (*Id.* at 9, 17). By the date of discharge on November 11, 2019, the only note made with respect to his foot was that his third toe had "some superficial crusting." (*Id.* at 14). There are no records indicating that Plaintiff was diagnosed with a staph infection or sepsis while at UAB.[9] In fact, medical records revealed that sepsis was expressly ruled out as a possible diagnosis. (Doc. # 22-8 at 10).

On August 22, 2020, Plaintiff filed suit in state court against the City and the Dispatchers. (Doc. # 1 at 6-17). Defendants timely removed the action to this court. (Doc. # 1). In his complaint, Plaintiff has asserted two claims against the City: (1) deliberate indifference to his serious medical needs pursuant to 42 U.S.C. § 1983, in violation of his Eighth and Fourteenth Amendment rights and (2) negligence. (Doc. # 1 at 11-13). Plaintiff has also asserted a single claim of deliberate indifference pursuant to 42 U.S.C. § 1983 against each of the Dispatchers. (*Id.* at 13-16). Defendants have moved for summary judgment on all claims asserted against them. (Doc. # 23).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing

---

[9] Plaintiff testified that he was told that a staph infection had gotten into his bloodstream and caused sepsis – all of which he believes originated from issues with his foot. (Docs. # 22-2 at 23; # 28 at 12). However, his statements do not qualify as Rule 56 evidence for two reasons. First, no medical record supports these assertions. As noted above, no physician at either UAB or St. Vincent's diagnosed Plaintiff with sepsis or staph nor opined as to what role (if any) issues with his foot played in his other ailments. Second, Plaintiff's opinion that issues with his foot caused him to develop sepsis is based on scientific, technical, or other specialized knowledge that is reserved for the opinion of those designated as experts under Fed. R. Evid. 702. Nor is his opinion rationally based on his perception; no reasonable juror could conclude that Plaintiff's diagnosed case of athlete's foot caused him to develop sepsis, particularly when there is no medical record supporting such a leap.

5

the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson*, 477 U.S. at 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

6

bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the nonmovant would bear the burden of proof at trial, a

> moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

> respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may

7

>come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* (internal citations omitted).

## III.     Analysis

Defendants primarily argue that Plaintiff's § 1983 claims fail as a matter of law because he cannot establish a violation of his constitutional rights. (Doc. # 23 at 1). Regardless, Defendants argue that they are also entitled to immunity. (*Id.*). The court addresses each of these arguments in turn.

### A.     Plaintiff's Deliberate Indifference Claims Against the Dispatchers (42 U.S.C. § 1983)

Plaintiff argues that the Dispatchers violated his Eighth and Fourteenth Amendment rights[10] by acting with deliberate indifference to his foot and chest conditions – conditions that he contends qualified as serious medical needs. (Docs. # 1 at 13-16; # 28 at 14).

The relevant constitutional provision in this case is the Eighth Amendment rather than the Fourteenth Amendment. Eighth Amendment scrutiny applies to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime, while the Fourteenth Amendment applies to pretrial detainees. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Because Plaintiff had been found guilty of failing to pay traffic citations at the time he was allegedly denied medical care, the court applies Eighth Amendment jurisprudence. (Docs. # 22-2 at 10; # 22-7). Regardless, the court notes that the Eleventh Circuit has stated that the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments. *See Hamm*, 774 F.2d at 1573-74.

---

[10]

Section 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party . . . ." 42 U.S.C. § 1983. The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. As particularly relevant here, the U.S. Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). To be actionable under § 1983, the conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain. *Bass v. Sullivan*, 550 F.2d 229, 230 (5th Cir. 1977).

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)). First, with respect to the objective component, a plaintiff must show (1) he had an objectively serious medical need that, if left unattended, posed a substantial risk of serious harm, and (2) that the response by the prison official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted) (quoting *Estelle*, 429 U.S. at 105-06, 97 S.Ct. at 291-92). Second, to satisfy the subjective

prong, a plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 at 1234 (quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S. Ct. 1970, 1974 (1994). A plaintiff bears the burden to establish both the objective and subjective prongs. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Here, the record evidence is sufficient to show that the basal cell carcinoma identified on Plaintiff's chest is a serious medical need. *See Stanfield v. Darbouze*, No. 2:14CV907-CSC, 2017 WL 2637399, at *7 (M.D. Ala. June 19, 2017) ("Undoubtedly, skin cancer is a serious medical need."). A physician subsequently diagnosed Plaintiff with the condition and performed an excision of the area. (Doc. 22-8 at 4). Although death from basal cell skin cancer is uncommon, it is nevertheless a serious condition. However, the same cannot be said with respect to Plaintiff's case of athlete's foot. Although a physician diagnosed Plaintiff with athlete's foot, there is no indication that his case posed a risk of serious harm to his health. Plaintiff's treatment plan simply directed him to apply a topical cream, keep the areas between his toes "clean and dry," take medications, and follow up with a clinic. (Doc. # 22-6 at 2, 8-9). Further weighing against the "serious" nature of Plaintiff's athlete's foot is evidence that he was discharged from the emergency room in one day and, when Plaintiff presented to another emergency room days later, the physician noted only unroofed blisters and lesions on his second toe. (*Id.* at 9, 17). While the court does not doubt that experiencing a "[s]welled up and oozing" foot is uncomfortable (Doc. # 22-2 at 16), Plaintiff has not shown that his condition rises to the level of a serious medical need. *See e.g.,*

*Thornton v. Hercule*, No. 4:11-CV-401-RS-CAS, 2013 WL 3991920, at *5 (N.D. Fla. Aug. 2, 2013) (dismissing Plaintiff's Eighth Amendment claim where evidence showed only that his athlete's foot was a "minor inconvenience[] and cause[d] minimal problems"); *Williams-Bey v. Carpenter*, No. CIV.A. 14-0490-CG-C, 2015 WL 4602871, at *6 (S.D. Ala. July 29, 2015) (dismissing an Eighth Amendment claim where Plaintiff's foot condition was "hardly severe," and "never threatened harm to Plaintiff's health). So, the record evidence indicates Plaintiff had one serious medical need – a basal cell cancer on his chest.

Regardless, to be successful on his § 1983 claims, Plaintiff must also demonstrate that the Dispatchers were "deliberately indifferent" to his serious medical needs (here, only to the condition identified on his chest). This he has failed to do. At the time of incarceration, there had been some drainage and bleeding coming from a scratch on his chest. (Doc. # 22-3 at 12). Defendant Waldrop transferred Plaintiff to a cell for medical observation and contacted paramedics, who simply covered the wound with a sterile bandage. (Doc. # 22-9 at 4). There is no evidence in the record that the paramedics expressed concern about the presence of cancer or other serious medical concern. (*Id.*). Moreover, neither the Tarrant Police Department nor even the St. Vincent's Emergency Room physicians expressed concern over the condition of Plaintiff's chest. (Docs. # 22-6; # 22-10). It was not until later that the basal cell diagnosis was made at UAB. (Doc. 22-8 at 4). Even construing Plaintiff's allegation that the paramedics' suggestion (in the presence of Defendant Waldrop) that he needed further medical attention in his favor, Plaintiff has offered insufficient evidence to show that Defendant Waldrop (and other Dispatchers) was subjectively aware of a risk that the scratch on his chest was basal cell cancer (or, for that matter, indicative of a staph infection or sepsis). *Farmer*, 511 U.S. at 829, 114 S. Ct. at 1974 (1994).

While Defendant Waldrop could have heeded the advice of the paramedics (although it is unclear from the record on what basis the paramedics suggested further medical treatment), the court concludes that her exercise of professional judgment was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The Constitution does not require that the medical care provided to prisoners be "perfect, the best obtainable, or even very good." *Harris*, 941 F.2d at 1510 (quotation omitted). Additionally, Plaintiff has failed to present any evidence indicating that the Dispatchers knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. *Harper*, 592 at 1234; *see Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979 (noting that for Eighth Amendment liability to attach, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."). Plaintiff has failed to meet his burden of making the requisite showing of subjective knowledge. It follows, therefore, that Plaintiff has failed to meet his burden showing that the course of treatment undertaken by the Dispatchers, particularly Defendant Waldrop, violated his Eighth Amendment rights. *Goebert*, 510 F.3d at 1326.

### B.     The Dispatchers' Immunity Defense

Even assuming, *arguendo*, that Plaintiff has presented evidence sufficient to establish that the Dispatchers violated his Eighth Amendment rights (which he has not), Plaintiff's § 1983 claims fail as a matter of law because the Dispatchers are entitled to qualified immunity. Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."

*Reichle v. Howards*, 568 U.S. 658, 664 (2012). It "shields an officer from suit when [he or she] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he or she] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The court assesses a defendant's entitlement to qualified immunity by engaging in a three-step analysis. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on the official claiming qualified immunity to establish that he was acting within his discretionary authority. *Skop*, 485 F.3d at 1136-37. Upon that initial showing, the burden shifts to the plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.* at 1137; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state.") (citing *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001) (*en banc*)).

Here, the Dispatchers have met their initial burden by offering evidence that they acted within their discretionary authority as public safety dispatchers at all times when they interacted with Plaintiff. Plaintiff, however, has not presented any argument with respect to the Dispatcher's assertion of qualified immunity and, thus, has failed to meet his burden showing that the Dispatchers' conduct violated a "clearly established" statutory or constitutional right. *Skop*, 485 F.3d at 1137. Nor does the evidence suggest that he could have met this burden; the court finds no precedent clearly establishing that jail officials violate the Eighth Amendment rights of an inmate who presents with what appears to be a case of athlete's foot and a chest wound by providing what

medical supplies they had available and then contacting paramedics. Accordingly, the Dispatchers are entitled to qualified immunity from Plaintiff's § 1983 claims.

### C.     Plaintiff's Claims Against the City

Plaintiff alleges that the City violated his Eighth Amendment rights by operating under a policy, practice, and/or custom of isolating inmates with medical issues and by failing to staff the Jail with medical professionals. (Doc. # 1 at 11-12). Plaintiff also alleges that the City is liable for negligence based on the negligence of the Dispatchers. (*Id.* at 12-13). The court addresses each claim in turn.

#### i.     Deliberate Indifference Claim Against the City (42 U.S.C. § 1983)

Even if Plaintiff has shown that his Eighth Amendment rights were violated (which, again, he has not), in order to prevail on his § 1983 claim against the City, he must show that his rights were violated due to an unconstitutional policy or custom. Plaintiff has failed to make any such showing.

"The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). To hold a municipality liable, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "To show an unconstitutional policy or custom, [P]laintiff must identify the policy or custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (*en banc*)).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 2436 (1985) (plurality opinion). "It is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999)). "A single incident would not be so pervasive as to be a custom," *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal citation omitted), because a custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991).

Plaintiff points to two allegedly unconstitutional policies and/or customs: (1) the City's custom of not having medical staff at the jail, and (2) the City's policy of placing inmates with medical needs in what he characterizes as "solitary confinement." (Doc. # 1 at 11-12; # 28 at 17-20). However, Plaintiff's argument relies entirely on his own experience, which is at most "[p]roof of a single incident of unconstitutional activity," and insufficient to impose liability against the City. *See City of Okla. City*, 471 U.S. at 823-24, 105 S.Ct. at 2436. *See, e.g., McDowell*, 392 F.3d at 1290 ("Simply put, this isolated incident [of delaying medical treatment due to understaffing], however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy . . ."). Noticeably absent from Plaintiff's argument is any evidence of "a series of constitutional violations" that would allow the court (or a reasonable juror) to infer deliberate indifference by the City to the medical needs of inmates. *Craig*, 643 F.3d at 1312.

Moreover, the evidence is insufficient to show that the alleged policies and/or customs constitute a "deliberate indifference to serious medical needs of prisoners." *Keohane*, 952 F.3d at 1265; *McDowell*, 392 F.3d at 1289. Plaintiff has alleged that the City's "policy of placing inmates

with medical needs in solitary confinement without medical attention or 'observation' is by definition, deliberate indifference . . ." (Doc. # 1 at 12). However, the Rule 56 evidence does not support Plaintiff's implied contention that "solitary confinement" and receipt of "treatment" were mutually exclusive in this case. Not only did Plaintiff actually receive treatment (in the form of medical supplies such as Band-Aids), but he was also seen and treated by paramedics. Protocol that allows jail staff to observe a patient with medical needs away from the "commotion" of general population and requires staff to contact paramedics -- even if staff doubt the credibility of the medical needs -- indicates the opposite of deliberate indifference to an inmate's medical needs. Accordingly, Plaintiff's § 1983 claim against the City fails as a matter of law.

  **ii. Negligence Claim**

Plaintiff has also asserted a state-law negligence claim against the City based the alleged negligence of Defendant Dispatchers.[11] (Doc. # 1 at 12-13). Specifically, Plaintiff has alleged that the Dispatchers negligently breached their duty to "provide Plaintiff with medical care for his serious medical needs." (Doc. # 1 at 13). Defendant argues that it is entitled to immunity based on the state-agent immunity that protects the Dispatchers. (Doc. # 24 at 18).

Under Alabama law, municipal liability is limited "to injuries 'suffered through the neglect, carelessness, or unskillfulness of some agent.'" *Walker v. City of Huntsville*, 62 So. 3d 474, 501 (Ala. 2010) (quoting Ala. Code § 11-47-190 (1975)). "Municipal liability under Section 11-47-190 is based on the doctrine of respondeat superior." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001). "Thus, for the [municipality] to be liable under that doctrine, the employee must first be liable for a tort." *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1057 (S.D. Ala.

---

[11] Oddly, while Plaintiff has not asserted a separate count of negligence against Defendant Dispatchers, Plaintiff appears to argue that summary judgment is not proper as to his state law claim against the Dispatchers. (Doc. # 28 at 20). But, there is a substantial question about whether Plaintiff can now argue against the dismissal of a claim that was never asserted.

16

2007) (quotation omitted). If the employee is not liable for any tort, then the municipality is absolved. *Id. See, e.g., Ex parte Dixon*, 55 So. 3d 1171, 1179 (Ala. 2010) (holding that defendant-city was immune where a municipal peace officer whom it employed was immune) (internal citations omitted); *Shaw v. City of Selma*, 2017 WL 1025677, at *19 (S.D. Ala. Mar. 15, 2017) (holding that where a police officer was entitled to peace-officer immunity, the city defendant was "likewise immune").

Defendants argue that state-agency immunity shields the Dispatchers against negligence-based claims because they are protected by the second *Cranman* immunity category, which broadly protects a State agent when the agent is "exercising . . . judgment in the administration of a department or agency." (Doc. # 24 at 19). *See Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). Plaintiff does not respond to Defendant's argument but, instead, argues that the Dispatchers are not entitled to immunity under Ala. Code § 6-5-338, which shields municipal jailers without the authority of a police officer from liability. Both of Plaintiff's arguments miss the analytical mark.

The Dispatchers are considered "peace officers" under Alabama law. *See Swan v. City of Hueytown,* 920 So. 2d 1075, 1079-80 (Ala. 2005) (citing Ala. Code § 6-5-338) (assuming, for purposes of appeal, "that the police dispatcher in this case is a "peace officer" where Plaintiff presented no evidence to the contrary); *Howard v. City of Atmore*, 887 So. 2d 201, 203 (Ala. 2003) (finding that a law-enforcement officer who was serving as a jailer/dispatcher, even though the officer was guarding the city jail like a regular police officer, was a "peace officer"). By enacting § 6-5-338, the Alabama Legislature intended to afford municipal peace officers the immunity enjoyed by their state counterparts. *Ex parte Dixon*, 55 So. 3d at 1176; *Sheth v. Webster*, 145 F.3d 1231, 1237 (11th Cir. 1998). By its very terms, the statute extends state-agent immunity to peace

officers performing discretionary functions within the line and scope of their duties. *Ex parte Dixon*, 55 So. 3d at 1176; *Moore v. Crocker*, 852 So. 2d 89, 90 (Ala. 2002).

Alabama Code § 6-5-338 provides that:

> [e]very peace officer . . . shall at all times be deemed to be [an] officer [] of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Discretionary functions have been deemed to be "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take, and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Moore v. Adams*, 754 So. 2d 630, 632 (Ala. 1999) (citing *Wright v. Wynn*, 682 So. 2d 1, 2 (Ala. 1996), and *L.S.B. v. Howard*, 659 So. 2d 43 (Ala. 1995)).

The test set out in *Ex parte Cranman* [12] defines Alabama's doctrine of state-agent immunity. The same test in *Cranman* for deciding state-agent immunity questions "governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a)." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir. 2010). Under *Cranman*,

> [a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ….
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, <u>or serving as peace officers</u> under circumstances entitling such officers to immunity pursuant to § 6-5-338(a).

---

[12] *Ex parte Cranman,* 792 So. 2d 392 (Ala. 2000), is a plurality opinion which was later adopted by a majority of the Supreme Court of Alabama in *Ex parte Butts.* 775 So. 2d 173 (Ala. 2000). *See also Fleming v. Dowdell*, 434 F. Supp. 2d 1138, 1162 (M.D. Ala. 2005) *aff'd,* 182 F. App'x 946 (11th Cir. 2006). Despite its plurality nature, due to its later adoption by the Alabama Supreme Court, *see Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006), courts have analyzed claims like this under *Cranman*. *See Ex parte City of Warrior*, No. 1200759, 2022 WL 2286244, at *5, 8 (Ala. June 24, 2022) (finding that defendants were entitled to peace officer immunity under *Cranman*); *Brown*., 608 F.3d at 741 (applying the *Cranman* analysis).

*Hollis*, 950 So. 2d at 309 (modifying category (4) of *Ex parte Cranman*) (emphasis added).

Plaintiff's allegation that the Dispatchers negligently failed to "provide medical care for his serious medical needs" (Doc. # 1 at 13) is based on actions (or inactions) that occurred while they were acting in their discretionary functions as dispatchers. (Doc. # 22-3 at 4) (discussing the Dispatchers' job responsibilities). While peace officers are not immune from liability when the "conduct is so egregious so as to amount to willful or malicious conduct or conduct engaged in bad faith," *see Hawkins v. City of Greenville*, 101 F. Supp. 2d 1356, 1362 (M.D. Ala. 2000), there is no evidence that such conduct occurred here. At best, Plaintiff's claim sounds in negligence, just as he himself has characterized it. (Doc. # 1 at 13). Because the Dispatchers are entitled to state-agent immunity from state law negligence claims, the City is likewise immune.

### IV.     Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. # 23) is due to be granted.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 13, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE